The next case today is Tamara Santos-Arrieta et al., Hospital Del Maestro, Inc. et al., Appeal Number 19-1935. Attorney Efron, please introduce yourself on the record and proceed with your argument. Yes. May it please the court, I am David Efron and I represent Plaintiff Appellant in this case. Later on, we are asking this Honorable Court of Appeals to set aside the amended judgment and reinstate the original judgment and jury verdict in this case. In the alternative, and we don't think it's necessary because it would again utilize unnecessarily the resources of the court, both judgments entered and the verdict could be set aside and the trial court ordered to retry the case altogether. Concisely put, Your Honors, in this case, the magistrate judge presiding over the case granted defendant's motion in limine on the day of trial, excluding our expert witness life care planner. Because we had reserved in the pretrial order the right to call opposing experts, we then called to the stand defendant's own life care planner, Dr. Katz, who testified as to the future needs and costs of plaintiff going forward. Much has it made of what to us is a red herring that this child has an autism spectrum disorder, which he does not have, and which has never been neurologically diagnosed. As Dr. Katz stated, he deals with the needs of the individual, not the condition. If a somewhat brain damaged child requires the same therapies... Mr. Everett, could you just clarify for us, please? Your expert says that the child had a brain injury. Did your expert also opine that the child is suffering from autism of some unspecified origin? No, Your Honor. What Dr. Carolyn Crawford, our expert neonatologist, stated was that this child had brain injury, brain dysfunction, developmental delay, motor impairment, and autistic-like behavior, but he was not autistic. He just had autistic-like behavior because sometimes when you have the type of brain damage that is not severe where the person needs to be in a wheelchair and fed through a feeding tube, the services and the therapies are similar. So sometimes the service provider will mark autistic when, in fact, there's never been such a diagnosis for this child. The child is brain damaged, and he suffered a brain injury. So if I may continue, Your Honor? Just to follow up to Judge Thompson's question, why did this issue of autism become so central to the case? The suggestion is that you were trying to establish that the negligent care that the child received post-delivery caused the autism. That was your attempt, and the judge felt that there was no scientific basis for drawing that causal link. The suggestion is that you made autism a central feature of the case. Is that not right? No, Your Honor. The autism and the autistic-like behavior goes hand in hand with the, I don't want to call it mild because there's no, but with the brain injury that is not a severe brain injury. And because of that, I think it was more a defense, the defendants more than anybody, were trying to confuse the issues by stating that this child was receiving services appropriate to an autistic child. But as I said before, the services were similar. We just need to pin this down, and we'll give you some more time. But we're trying to figure out, once again, going back to the question of how did this come up in the first place if the expert said the child is displaying symptoms that may be associated with autism, in other words, autistic behavior, which as you said, is not necessarily a diagnosis of autism. I mean, how did this come up? No, Your Honor. Sometimes different conditions throw off the same behavior. And more importantly... I understand that. We're trying to figure out how it came up. If you're telling us that your expert never said this, how did it come up? It came up because in the documents that we submitted as to the therapies that the child was getting, and in the documents that we submitted to the expert life care planners and discovery, the services that the child was getting were similar to what an autistic child would be receiving. And because of that, the service provider, it's easier to fill in the blank and just say, well, this is the kind of occupational therapy, this is the kind of speech therapy, and then by going down the line, what they're doing and what So without a diagnosis of any kind that child is autistic, they would provide those services, which were very helpful to him because it's exactly what he needed. Like Dr. Katz said, he could deal with the needs. Was this a coding issue? In other words, health care providers have to insert certain codes? That's exactly what our expert said, that it was a code by non-doctors, just service providers, that in order to get reimbursed, they would have to fill in the code. And then in those codes, because the services were very similar, they would do it that way. But there has never been a medical diagnosis of autism on this child. The fact that the child was getting therapies and treatment and services, which could be charged, the child does not change his condition. Dr. Crawford clarified this. She clarified that the brain damage often caused autistic-like behavior. Dr. Katz did unnecessarily mention autism and somewhat appeared to contradict himself several times in his testimony, possibly because he wanted to not hurt the defendants that hired him. But that being the case, if brief review of the transcript, which we made reference to at page 15 of our brief, indicates that the court allowed Dr. Katz's testimony and defendants' attorneys agreed. And that is the law of the case. Dr. Katz's testimony was presented to the jury based on that ruling. The jury entered a unanimous verdict based on that ruling and that testimony. To have the court set aside the jury verdict as it did here and substitute it for an amended verdict by deciding a year later that it made a mistake in allowing Dr. Katz's testimony is a clear abuse of discretion. Counsel, I'd like to ask you, how do you understand the Rule 50A and Rule 50B motions that the defendant filed? As I read them, and I think opposing counsel will have to comment on this, it doesn't seem to me that there's anything in those motions that go to the issue of damages, which became the basis for the court's ruling. As I read those motions, they're an attempt to argue that there was insufficient evidence to conclude that there was a causal relationship. It's really directed at liability that there was any kind of causal relationship between the evidence of negligence and the autism. I mean, is that how you read them? Yes, Judge Leifess, we addressed that in our brief. And precisely in the brief, we discussed the fact that the court granted defendants' Rule 50 motion for judgment, NOV, as to Dr. Katz's testimony. The court had been waived by the defendant and police, since this point and these grounds were not raised under Rule 50 in defendants' motions previously at trial, during trial, or at the end of trial. And that's why we think, additionally, that the court's ruling in setting aside the verdict was wrong. And based on that, we respectfully request of this honorable court that it reverse and set aside the amended judgment and reinstate the original judgment and jury verdict. I reserve time for rebuttal. I don't want to go too much into it. Yes, Judge Thompson. Go ahead. No, you finish your thought, because I'm going in a different direction. Okay, just very quick. So you insist that if the judge's post-verdict ruling was incorrect, that the verdict should be reinstated. Why wouldn't it be more appropriate to order a new trial on the issue of damages relating to future, not pain and suffering, not to compensate for the narrow issue of damages involving need expenses over the lifetime? Why would that not be the more appropriate remedy? Well, it very well could be. And then we would be retrying a case only on the amount that this child would need for his future needs. But the jury already ruled on that. The jury already heard testimony on that. It would be rehashing over something that a jury already unanimously agreed on. I think it would be unnecessary. But the problem, putting aside perhaps the procedural problems with the way the defendant handled this post-verdict, I mean, there is, the fact is that the judge was very concerned that in light of earlier rulings, that basically autism was off the table as a source of future needs, there wasn't, Dr. Kass's testimony, discussion of autism. So that, what you ended up with was a mix of testimony about the possible link between autism and future needs, or perhaps future needs unrelated to other organic deficits. So it would seem to be contrary to the ongoing concern of the district court about the continued involvement of autism to simply reinstate the verdict. When you do have that problem with Dr. Kass's testimony, you have that mixing of autism-related damages and damages related to other deficits of the child. Isn't that true about Dr. Kass's testimony, that it had that mix? And before you answer that, the problem is you didn't appeal that finding. Well, keep in mind, Your Honors, that Dr. Kass was an adverse witness, and although he was instructed by the court to not go into, not even use the word autism, he kept repeating and repeating it in his testimony to not hurt them too much, although, so, you know, it was an adverse witness. It's what we could do with this testimony. We're happy to miss it. It would be a waste of the court's resources retrying a case when a jury has already ruled on these issues. You don't mean retry the case in its entirety. You said you would be happy to retry the case. You don't mean that. Well, when I say retry the case, Your Honor, I meant exactly within the parameters that Your Honor stated, which is only as to the future life care needs of the child. That's the only thing on the table right now, and that's the only thing that was appealed. The defendants did not cross appeal the amount that was granted for the damages and the pain and suffering of this child. Only on the table is the future life care plan number. Thank you. Did you seek to call Dr. Kass in your case-in-chief? No, Your Honor. We had our own life care planner, which was taken out of our witness list and then in limine the day of trial. I understand that. I understand that, but the question. Yes, we had him listed as a witness in our case-in-chief because we listed all of defendants, witnesses, and experts as our witnesses. I'm trying to figure out if what happened procedurally impacted what was said at Rule 29. In other words, did you seek to call Dr. Kass in your case-in-chief? We called him in absence of our own life care planner. In your case-in-chief? In your case-in-chief. Before you rested, did you call him? Yes, of course. Of course we called him. We called him as our witness. The brief seemed to suggest that he was called by the defendant when they put on their defense. Well, if you see the sidebar argument, which we list at page 15, and if you see the transcript during that whole discussion, the court ordered the defendants to produce to us their life care planner because otherwise there was going to be an instruction which was not going to be helpful to them. I thought you tried to call him. He was not available, and so it was agreed that he would be called as an adverse witness as part of the defense case. That was an agreement that was worked out, right? Isn't that exactly what happened? That's exactly what happened, yes. That's exactly what happened. Maybe I did not understand Judge Listed as our witnesses is what I think you're trying to get to. No, I was trying to figure out when he was put on the witness stand. He was put up on the witness stand in our case-in-chief. No, he wasn't. He testified in the defense case. He might have been on your witness list, but he never took the witness stand in your case-in-chief. That did not happen, unless the briefs are wrong. In other words, when you're putting on your case, at some point you have to rest to signal to the other side that if they have something to say, now's the time to say it. It's my understanding that you rested and that Dr. Katz was called as a defense witness, even though you had reserved the right to call. I understand that, but is it that there was an agreement that he would be called in their case and not called as a witness before you rested? It was a combination of things. It was a matter of his availability, which he was not available at the time of the end of our case, and the agreement, or order and agreement, by the court, which we can see at page 15 at the sidebar transcript, at the transcript of the sidebar, when we argued that. The defendants agreed to bring him, the court ordered he be brought, and he was really our witness. We took him on direct examination. Oh, okay. Thank you. Thank you. Thank you, Your Honors. I hope I still have some time for rebuttal. You do. Attorney Efron, at this time, if you could please mute your audio and video, and Attorney Lopez de Victoria, if you could please unmute and reintroduce yourself on the record. Yes, good morning. This is Jeanette Lopez de Victoria on behalf of the Appellants Hospital del Maestro and Continental Insurance Company. First of all, I have to clarify some of the questions that were asked of Mr. Efron. The presentation of Dr. Katz was done during defendant's case in chief, and it was pursuant to an agreement that was reached with the court as to the order of the presentation of this expert witness. The court even went so far as to say how a direct exam, SMVs, cross-examination would be handled. Plaintiffs acquiesced to that, and that is well-documented in a sidebar. I believe Judge Thompson had asked a question regarding how the whole issue of autism came up in the case. I think it's important to note that the reason that that became such a central issue, not only to the initial preclusionary ruling by the court limiting Dr. Crawford's testimony, but also as to subsequent evidentiary rulings, was that the court found that based on Dr. Crawford's deposition testimony and also on her expert report, that there was no causal relation established between the alleged negligence that occurred at birth and the subsequent manifestation of the autism in the child. I also have to clarify that Attorney Efron stated, which is not true, that there was no diagnosis of autism as far as this child is concerned, and that's not correct. The father, Mr. Querales, testified that Gustavo was diagnosed with autism in 2010. That's at page 537 of the appendix. The mother, Mrs. Santos, testified that her son was autistic and that she had researched this condition, and she also testified that her son was diagnosed with autism by a neurologist who was treating the child, Dr. Mehta. Those two references to the record can be found at appendix 576 and 578. Counselor, would you please respond to the question that I posed to Mr. Efron? My impression is that the trial court used your 50A and 50B motions to make a ruling on the future need expenses to vacate that portion of the jury at all. Those motions were directed at trying to argue that there was no basis for the liability determination that the court made. Is that an improper reading of those? Yeah, I think it's incorrect in the sense that when the counsel for the hospital and the insurer made their rule 50 argument, Dr. Katz, there had been no evidence as far as damages for future needs. It wasn't a matter that could be addressed at the 50A stage, the rule 50A stage, because simply there had been no evidence placed in the record regarding what the costs of those future needs are. Now, if you go with this in the 50B motion, I would agree that although the motion focuses on the sufficiency of the evidence, it does go to sufficiency of the evidence, not only as to causation, but also to damages. And if you read that motion in conjunction with the appellant's rule 59 motion, there goes into detail as far as the evidentiary ruling and the effect that it had. Now, irrespective of the title that is given to the motions, I believe that the court, when it went back and ruled on the 50A and the 50B motions and the post-trial motions that were filed, it was so concerned with maintaining consistency in the rulings that had met particularly the preclusionary rulings early on in the case pertaining initially to limiting the testimony of Dr. Crawford with regards to any damages that stem from or arise from or are related to a condition for autism, which the court had expressly stated that they were not allowed to be compensated for. And also the ruling precluding the testimony of the plaintiff's life care planner, Jerry Panagio, because her life care plan focused almost in its entirety on autism. Now, here there were certain findings. So, did Dr. Crawford find no causal connection between autism and the brain injury? No, she was not able to establish any causal relationship between the alleged negligence during the delivery of the child and the autism. That's why the court limited her testimony. She was only allowed to testify as to the causal relationship between what allegedly happened transpired at the birth with brain injury. Counsel, I do not understand why such a big deal is made about this label of autism. This happened at birth. And really, Dr. Katz kept making the point that what he was addressing were needs, needs, needs, whatever the reason for the needs, they are still needs and needs require attention and needs require certain expenditures to meet them. So, I simply do not understand why this label of autism assumed what seems to me is outsized importance in this case. I just don't get that. Well, the reason that the diagnosis of autism was important for purposes of Dr. Katz's life care plan is that he specifically testified that he used the condition of autism to determine what the child's life expectancy was. Four minutes remaining. Yeah, it was not a life expectancy that was specific to a brain injury. Now, what for the court was important was the fact that Dr. Katz never testified, nor did the plaintiffs elicit testimony from him that was fact specific that would have determined which future needs were specific to a condition of brain injury, vis-a-vis which conditions were specific to a condition of autism. There might be some overlap, but even that overlap was never, there was no evidence presented of that. And since the court had already ruled that one, there would be no, neither testimony or of an autism condition and the life care planner's report and her testimony were precluded based on the fact that her life care plan was based on the condition of autism. The court, I believe, to maintain consistency in his decisions, determined that Dr. Katz's report suffered from basically the same infirmity or the same vulnerability. But counsel, this is what I do not understand. I understand the concerns that you've described, but they were all present at the moment before that case goes to the jury. And there's a sidebar conference where the trial judge raises his concern about the link between autism and future needs and ask you, or were you trial counsel? No, I was not. I was not trial counsel. And ask your side of the case, whether there are any problems with Dr. Katz's testimony going to the jury. The response is no, we have no problems with it. The court allows it to go to the jury. There's no instruction to the jury to try to separate future needs that may be related to autism or some other condition. So it goes to the jury under those conditions. And then post-judgment, the judge seems to say, well, that was a mistake. I probably should not have allowed that to go to the jury and wipes out the entire verdict for future needs. Maybe there was a new trial on that issue, but to completely vacate a $3 million verdict on an issue, I just don't understand the justification for that. I think the judge realized that he had, I mean, let me backtrack. During when you take, right before Dr. Katz testified, there are two very extensive sidebars with counsel when the that he was going to hear that testimony conditionally. And that that would be based on the presentation of evidence that would establish that the future needs were related to a condition of brain injury or brain trauma. That was never done. And the court even goes so far as to say, that's the elephant in the room. If neither of the parties address it, I'm going to have to address it. There's another sidebar after Dr. Katz's testimony comes in before the case goes to the jury. And I think that discussion is as I tried to describe it. Now, if that's inaccurate, you should certainly tell me, but that's the critical. Actually, the only problem that I have with that particular portion of that set page, I believe it's 1088 of the appendix is that the court is asking whether there's any problem with the testimony of Dr. Katz. And then the defense counsel says, no. And then he asks, what does no mean? And one of the, I forget if it was a attorney, if it honor the court that says no means that you, that the, the, the evidence is going to go in immediately after that. If you keep reading the transcript, it goes into another issue of whether the, the Dr. Katz is when he wrote down on the, on the screen, all the numbers of his, the computations for the future needs, whether that would be marked as an exhibit or not. And the issue of whether the testimony was actually going to be admitted, or if it was acceptable, the testimony of it kind of got lost because you can even see in the transcript of the trial that it says inaudible, many people talking at the same time. So at least I can't glean. I obviously I was not personally, I was not trial counsel, but I can't glean exactly what that happened in that moment. But I don't think either, even, even that says the, the defense had maintained from the very beginning had objected to the Can I just finish this thought? Please, please. Since they had always maintained that Dr. Katz's report, since it was based on a life expectancy for autism and, and was based in part on the autism that it should, that Dr. Katz should not be presented. I think the court was correct in revisiting the issue when it actually received the transcripts to go through how it was that the evidence played out because the court was very clear that the presentation of that witness was always something that was, we'll wait and see what happens. So I think that's why, and he did it more to maintain consistency in the evidentiary rulings. And I have not yet seen any case to date. And certainly the appellants did not cite one in their brief that says that a court's gatekeeping function somehow ceases when the case goes to the jury. I think if the court recognizes that perhaps he made an erroneous evidentiary ruling that has an effect on, on the, on the jury verdict, that he is precisely the person to correct that error while the case is still before him. So that's how I would respond to that. There's any further questions? The problem with that, with that response though, is that if there was discussion at the bench, wherein defense counsel was specifically asked if he was okay with the evidence going in and he said no, then that raises waiver problems. Okay. Thank you. Thank you very much. Thank you, Counselor. At this time, Attorney Lopez Dave Victoria should mute her audio and her video and Mr. Efron should reintroduce himself on the record. Thank you, David Efron for appellant again. One point, you can be sure your honors that if there would have been any diagnosis by any doctor of autism, it would have been entered into the record by the defense. There was none. The parents are not doctors. The parents are working people who may have been told by their service providers for their child that this child may have. But Mr. Efron, I'm trying to understand, you, you didn't appeal the court's ruling on that fact. Is that correct? Well, I appealed, I think, I think it was included in what I did appeal as far as. There's nothing in your brief that challenges the court's ruling to exclude autism or a causal note. Well, this court's conclusion that there's no causal connection between what may have been autism and the injury. There's nothing appealed on that point. Because the child did not have autism. The child had a brain injury. So there was really saying that, but the court nonetheless limited your expert and precluded your other expert. And that wasn't appealed as an as to incorrect rulings. So we're stuck with what the court did, as far as those exclusionary rulings are concerned. I understand. I understand. Our life care planner, again, went into the diagnosis based on the services required by the child. The life care planner is not a doctor, did not go into the actual diagnosis. The problem with that is that the child may have needs that are totally unrelated to any kind of medical negligence on behalf of the defendants. They're not responsible for the child's if they're not causally connected to the injury sustained. And once the court said that autism is a separate diagnosis and there's no connection between that diagnosis and the alleged injury, and you didn't appeal it, we sort of stuck with the record that we have on appeal. And on that record, the jury found that the defendants were negligent and were the cause for the brain injury caused to that child. And that's why I think the jury determined that the hospital was negligent based on the testimony that it heard at trial. Now, going back to your very well asked questions of appellee, once the court allowed this testimony of Dr. Katz, who really was our substitute testimony for our own life care planner for the reasons that we now know, once that testimony was allowed to go to the jury, that was the law of the case. The court should have refused to reopen what had already been decided precisely because of that. That does not promote efficiency. It does not promote finality. Reopening a case based on having second thoughts on a ruling during trial. I think everybody, all the parties have to live with that ruling at trial because that was the law of the case. For the reasons set forth in the argument and in our brief... Excuse me, that can't be right. In considering a post-verdict motion, if the judge decides that he or she made an incorrect ruling in allowing evidence to go to the jury, that the judge cannot try to fix that. Now, there is a question of how you fix it. I think it's a serious question here, whether you fix it by completely abrogating the jury verdict, damages related to future need, or whether you say, well, I did make a mistake. I think there may be a failure to discriminate between damages related to autism, which I've said is not in the case, and damages related to another brain injury, which I think is in the case. We need a new trial on that, but your blanket assertion that the judge cannot reconsider an admissibility ruling, I don't know of any law that supports that. I believe that becomes a law of the case once the court decides to allow that testimony. Time has expired. Thank you very much, That concludes the argument in this case. Attorney Efron and Attorney Lopez de Victoria, you should disconnect from the hearing at this time.